IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| TAMMY SAD, | ) | 2:26-cv-2117-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| CITY OF NORTH CHARLESTON | ) | |
| CITY OF NORTH CHARLESTON POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Tammy Sad, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby complains against the Defendants, City of North Charleston and City of North Charleston Police Department:

## NATURE OF THE ACTION

1.      This is an action for age discrimination, harassment and retaliation brought pursuant to Age Discrimination in Employment Act. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

2.      This is a civil action concerning the failure of the Defendants to protect the Plaintiff from Discrimination, Harassment, and Retaliation.

3.      This case further concerns the actions of Employees of the Defendant, City of North Charleston and The City of North Charleston Police Department wrongfully discriminating

1

against the Plaintiff her complaints regarding failure to follow the law, complaints regarding discrimination, and retaliating against her for her complaints.

4. Authority to bring this action is vested in the Plaintiff by Federal and State Law.

## PARTIES

5. The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

6. At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendants as defined by State and Federal Law.

7. On information and belief, the Defendants are a local municipality.

8. At all times, relevant to the allegations in this Complaint, the Defendants employed more than 15 persons in the State of South Carolina.

9. At all times, relevant to the allegations in this Complaint, the Defendants operated within the State of South Carolina.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

11. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91).

12. Charleston County is the proper venue for this action pursuant because this is the District and Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

13. The Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination, and retaliation.

14. The Plaintiff signed the charge on May 7, 2026.

15. The Plaintiff's charge of discrimination, Charge Number 415-2026-01000, set forth the following:

I. *I was hired by the above-named employer on or around April 1, 1991, as a Dispatcher, and my current position is a Bureau Commander. I was advised on or around August 19, 2026, I would be required to be transferred to a different bureau, but after I submitted my complaint to Human Resources, the transfer was canceled. After engaging in protected activity, my supervisor has left me out of conversations and isolated me from other Bureau Commanders.*

II. *I was told the reason of the transfer was that there was a need to invest in younger employees who have more time in their careers.*

III. *I believe I have been discriminated and retaliated against because of my age 58, in violation of the Age Discrimination in Employment Act of 1967, as amended.*

16. The Equal Employment Opportunity Commission issued a Determination and Notice of Rights on May 12, 2026. The Right to Sue set forth the following:

### DETERMINATION OF CHARGE
*The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed. The EEOC is terminating its processing of this charge. The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of the EEOC's official notice of dismissal. Otherwise, your right to sue based on the above numbered charge will be lost.*

### NOTICE OF YOUR RIGHT TO SUE
*This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you*

*do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)*
*If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge  415-2026-01000.*

17.    That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## FACTUAL BACKGROUND

18.    That the Plaintiff is a Caucasian female over the age of 40 years old.

19.    That the Plaintiff was hired by the Defendant on April 1, 1991, as a Dispatcher.

20.    The Plaintiff has been an exemplary employee with the Defendant working diligently, proficiently, and passionately in her many roles.  The Plaintiff's exceptional skills and exemplary work ethic have led to her being promoted to her current position of Bureau Commander.

21.    Throughout the Plaintiff's employment she has been required to follow the policies and procedures of the police department and has done with disciplined commitment.  The policies and procedures of the Police Department have specific requirements and contain many protections for their employees.  The Policies set forth prohibitions regarding discrimination, differential treatment, hostile work environment and retaliation.

22.    During the Plaintiff's employment she has worked with and become friends with Angela Johnson, an African American Female.

23.    In 2024, the Police Department was required to search for a new Chief of the Department. In their search the City decided to hire a consulting firm to make recommendations for the new Chief.

24.    The Associate Chief Angela Johnson applied for the position of Chief for North Charleston Police Department.  Associate Chief Johnson was not selected.

4

25.    The search committee and City hired Ron Camacho in November 2024 to be the Chief of Police for the City of North Charleston.

26.    On the day that Camacho was sworn in, the Mayor for the City of North Charleston promoted Angela Johnson and Karen Cordray to Associate Chiefs.  Both of these women had applied for the Chief of Police position and had not been selected.   Shortly after Chief Camacho took office he held a meeting with Angela Johnson and informed her that he would assist her in reaching the next level at another agency.  Johnson explained that she had no desire to leave the city and would welcome his assistance getting to the next level at the City of North Charleston.

27.    The Plaintiff realized at this time that she was witnessing a shift in the culture at the Police Department.  The Plaintiff witnessed employees that were not "yes, Chief" persons were subject to retaliation.   Women and minorities were subjected to discrimination, hostile work environment and retaliation if they complained.

28.    On February 26, 2025, the Plaintiff was interviewed for a promotion to the position of Captain.

29.    On February 28, 2025, the plaintiff was informed that she was selected for promotion to Captain.  During the selection process, the Plaintiff was informed that she would not be remaining in Special Investigations but would be moved to Patrol as a Captain because all newly promoted individuals returned to patrol.  The Plaintiff was aware that there was a Captain position open in Special Investigations, but she was not selected for that position, a male was placed in that Captain's position.  The Chief could have left the Plaintiff in special investigations but chose not to.

30. On March 28, 2025, the Plaintiff participated in a promotion ceremony and was transferred to the South Bureau.

31. In March/April of 2025, the Plaintiff was called into Chief Camacho's office with Deputy Chief Perry, where she was asked if she wanted to attend any command colleges. The Plaintiff informed them that she was interested in attending academic training that was online or local. The Plaintiff informed the Chief and Deputy Chief that this limitation on where was due to the recent deaths of both her parents and her now being responsible for the care of her disabled brother. The Plaintiff further informed them that she did attend the FBI Executive Level Leadership (LEEDA) and she had enjoyed it and would be interested in something similar to that type of training. The Plaintiff believed that the meeting was strange considering that Perry was not even her deputy chief.

32. On April 8, 2025, The Plaintiff was in a meeting with Captain Holt and at the time Captain Kuechler. Deputy Chief Keys was their supervisor at this time. The Plaintiff, Captain Holt and Captain Kuechler were discussing the transfer of certain officers. During this meeting, the Plaintiff tried to exercise authority over her Bureau. However, she was challenged by Kuechler at every turn. After the meeting, Kuechler texted the Plaintiff "Tammy is mad." Immediately following that text he texted her "Why are you upset," The Plaintiff responded saying "I guess you texted the wrong person."

33. On June 17, 2025, One of the Plaintiff's officers, requested a transfer to the Schools via Administrative form. Kuechler, who was the Central Bureau Commander, signed the request and sent it through without discussing it with the Plaintiff. The Plaintiff learned of it later when her boss, Deputy Chief Keys mentioned the transfer request. Keys showed the Plaintiff the transfer request with Kuechler's signature. The Plaintiff asked why

6

Kuechler had signed it. Keys had no response and neither did Kuechler. At this time, the Plaintiff realized that other individuals were interfering in her ability to do her position.

34. On June 28, 2025, The Plaintiff was notified by Deputy Chief Kuechler (who had been promoted) that he was meeting with Sgt. Lawrence the next morning to demote him and if she wanted she could be there. No one discussed any actions against her Sgt. Including whether or not he was under investigation and why he was being demoted. The actions of the Deputy Chief and other command staff were actions to interfere with the Plaintiff's employment, ostracize her from command staff decisions, and the terms and conditions of her employment.

35. On July 30, 2025, the Plaintiff walked into a meeting for the demotion of Sgt. Lawrence where Kuechler, the Chief, Lt. J. Dalton and Assistant Chief Perry were waiting in Perry's office. When the Plaintiff walked in the conversation immediately stopped and became very awkward. The Plaintiff walked away and took a seat beside another desk where she could hear bits and pieces of those individuals discussing her Bureau. The Plaintiff was not asked to join the conversation which is further evidence of ostracizing her from command staff meetings.

36. On August 5, 2025, during a CompStat meeting with different ranks from different divisions, the Juveniles selling Palmetto Roses were discussed. The Chief told those in attendance that we should lock up the Juveniles, video tape them and publish the information to the media. Assistant Chief Johnson stated that she and others were working on a project with the mayor's office regarding this issue, videoing the juveniles and publishing it to the media would place the police in a bad light. The Plaintiff and AC Johnson were explaining the project with the Mayor's office and the Chief had a look of

disgust on his face towards the women. The Chief immediately dismissed the women and looked at the male lieutenants and instructed them "you guys are smart; you work on it." The Chief's actions totally dismissed the Plaintiff and AC Johnson. The Actions of the Chief further undermined the Plaintiff as an older female.

37. On August 7, 2025, one of the Plaintiff's officers, Officer Demalo was taken to Kuechler's office for a letter of instruction for an accident that she was previously involved in. The Plaintiff was not aware of the discipline nor was she involved in the presentation of the discipline. The actions of command staff were further evidence of discriminatory treatment, retaliation and changes in the terms and conditions of the Plaintiff's employment.

38. On August 13, 2025, the Plaintiff attended a Sergeant and above meeting, where the Chief used excessive profanity, clenched his fists and turned red while discussing a performance protocol platform that the agency began utilizing. The Chief's behavior was unprofessional and excessive. The Chief further stated that the performance protocol (a business he is a part of) that the room better be "fucking filled so help him God." The Chief went on to say that he wanted to create his own Camacho mafia with leaders in the area. The Chief further stated that he had already demoted 2 people and he had no problem demoting more. The actions of the Chief felt like a threat for the Plaintiff.

39. On August 19, 2025, at 9:03 am the Plaintiff was instructed to come to headquarters for a meeting with the Chief. When the Plaintiff arrived at his office, the Chief and Deputy Kuechler were waiting. The Chief informed the Plaintiff that it was not punishment, but he was transferring her. The Plaintiff informed the Chief that she did not want to be transferred and asked why the Chief was moving her. The Chief informed the Plaintiff that

he had received the blessing on his promotions, and he needed to place another younger male officer, Niemiec, over a Bureau. The Plaintiff asked why she had to be moved. The Chief informed her that another officer had just been promoted over patrol and he would not be moving that officer. The Plaintiff asked why Holt could not be transferred rather than her. The Chief informed the Plaintiff that it was not her fault, but he wanted to transfer her and it was going to be done. The Chief then informed the Plaintiff that he needed to invest in the younger people that still had time left in their career. The comment was specifically directed at the Plaintiff's age. The Plaintiff informed the Chief that she took offense to that comment and that she was not going down to the Administration Bureau to rot, retire, or die. The Chief stated that he did not mean the comment that way. The Plaintiff asked when this was to take place. Kuechler informed her that it would take place the 1st of September. When compared to the Plaintiff Niemiec had significantly more training than the Plaintiff so to state he needed to invest in him could have only been about the age of the individuals not about training.

40.	After the Plaintiff left the meeting, the Plaintiff called the Mayor's assistant and requested to have her meeting with the Mayor immediately moved up.

41.	The Plaintiff met with the Mayor on August 19, 2025.

42.	On August 20, 2025, the Plaintiff was in her office when Sgt. Thomes came in and informed her that he had been called to the Chief's office to meet with the Chief, Kuechler and Captain Niemiec and was given 24 hours to consider a transfer. The Plaintiff again was not included in this conversation regarding one of her Sgts.

43.	Later that evening the Plaintiff was at a community event when she was approached by Assistant Chief Perry. AC Perry asked the Plaintiff if she was ok. Perry further stated that

he knew she had been transferred multiple times in the past. The Plaintiff asked why Perry had not spoken up and protested the transfer. Perry informed her that he knew nothing about it until after she was informed of the transfer and that he did not have a response to why.

44. On August 21, 2025, the Plaintiff met with Human Resources and filed a formal complaint. As a result of the Plaintiff's formal complaint the transfer was held in abeyance pending an investigation. As a result of the formal complaint and the transfer being held in abeyance, Captain Wright was transferred to the Administrative Bureau. Captain Wright had recently been promoted.

45. On August 25, 2025, while the Plaintiff was in her office, Lt. Sherwood came in to inform her that he wanted to keep the Plaintiff in the loop and that Kuechler had emailed him to let him know that he was being transferred. The Plaintiff was not included in the email and was not aware of the transfer. The actions further undermined the Plaintiff's authority and her chain of command.

46. In early December, the Plaintiff became aware of an issue in the department and rather than report the policy violation she decided to come up with a solution. The Plaintiff's resolution was to research, submit an Administrative Action form that requested assistance from the training unit, identify some optional handcuff cases that officers can carry, and request an executive order rather than a change in policy. The Plaintiff presented the AA form to Kuechler during a Bureau Commander meeting where he advised her that it wasn't within policy and he would not move forward with the form. The Plaintiff explained again the reason she was submitting it and he was required to forward it to executive staff to review whether or not he agreed with it.

47.    On December 12, 2025, while in a meeting, Kuechler failed to present the Plaintiff's Administrative Action form.  AC Johnson asked Kuchler regarding the Plaintiff's Administrative Action form regarding handcuff cases, and only then was it presented. The Plaintiff's proposal was approved and the Plaintiff followed up by providing the styles of cases that were agreed upon by the training unit.  As of today, that has still not occurred. The actions of Kuechler were retaliatory in nature and purposefully to undermine and treat the Plaintiff differently.

48.    On January 21, 2026, the Plaintiff learned that one of her officers was being promoted to Corporal.  The Plaintiff was informed that Lt. Draper would be informing the officer since Kuechler was out of town.  The Plaintiff again was bypassed as the officer's Captain.  The Plaintiff should have been involved in the promotion, notified the individual and been allowed to have a role in the management of her staff.  AC Johnson learned of the actions of others she immediately informed the Plaintiff and Draper that the Plaintiff should be allowed to call and tell him about the promotion.

49.    On February 2, 2026, Niemiec informed the Plaintiff that he was going to go to South to the new community gym and conduct a security assessment.  The Plaintiff asked why he was chosen to do this action in her area.  Niemiec stated that Dave Cheatle told him to do it.  The Plaintiff was as qualified to conduct this assessment as it was her area of the city. The action of others was to undermine the Plaintiff's authority and further attempt to destroy her career.

50.    On April 30, 2026, after a meeting the Plaintiff saw Lt. R. Dalton speaking to Kuechler. The Plaintiff made eye contact with Kuechler when he asked if she wanted to meet with them and Officer Winn so that he could receive his letter of reprimand.  Surprisingly, the

Plaintiff was aware that the reprimand was forthcoming but had no idea when it was scheduled to be given.

51. On May 13, 2026, the Plaintiff met with Niemiec and Holt in Niemiec's office to discuss what all they all needed to talk to Kuechler about when he returned to work on the 14th. Niemiec mentioned Sgt. Ryan's team and that he had to deal with a problem. Nothing else was said. Later that day the Plaintiff was called by Sgt. Ryan informed that Niemiec asked him if he wanted to take over Sgt. Hanson's team down South when Sgt. Hanson retired. The Plaintiff had no role in this selection nor was she included in the conversation regarding her Bureau.

52. On May 15, 2026, the Plaintiff met with Kuechler and the other Bureau commanders. Niemiec informs everyone that Ryan would be taking over Hanson's team if he accepted the offer. The Plaintiff asked when this was decided. The Plaintiff informed all in this meeting that patrol Bureau Commanders should be involved in decisions regarding their Bureaus. Nothing was mentioned regarding the authority of the Plaintiff over her Bureau and the actions of the Command Staff in undermining the Plaintiff's authority, changing the terms and conditions of her employment and retaliating against her have not ceased.

53. The Chief has made discriminatory statements to the department including "in a few years this is going to a younger looking department." These statements made older officers feel undervalued and discriminated against.

54. The Chief held meetings with African American police officers only and Hispanic only. These meetings made the officers feel that Chief Camacho was dividing the department based on their races.

55. That the Plaintiff was subjected to a harsh work environment because of her complaints, and retaliation for her concerns.

56. Each and every reason presented by the Defendants for actions taken against the Plaintiff were pretextual.

57. The Defendant violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

58. That as a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.

59. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her Age, and Retaliation.

60. That the Defendants treated the Plaintiff significantly differently based on age and her and in retaliation for her complaints.

61. That the Plaintiff treated the individuals not in the Plaintiff's protective category more favorably.

62. The Plaintiff complained regarding the differential treatment.

63. That the Defendant's actions towards the Plaintiff violated the law.

64. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

65. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, and complaints, the Plaintiff:

   a.    suffered severe emotional distress;

   b.    suffered future lost wages and future lost benefits;

13

    c.     suffered economic damages;

    d.     Loss of employment;

    e.     Loss of Future employment;

    f.     incurred attorney fees for this action;

    g.     incurred costs of this action; and

    h.     will incur future attorney fees and costs.

66. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

67. Pursuant to Federal Law, the Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to the Law, along with prejudgment and post-judgment interest pursuant to the law.

## FOR A FIRST CAUSE OF ACTION
## AGE DISCRIMINATION IN VIOLATION OF ADEA

68. That Paragraphs one (1) through sixty-seven (67) are hereby incorporated verbatim.

69. That the Plaintiff was an employee of the Defendants.

70. That the Defendant is an employer in accordance with the ADEA.

71. That the Defendant discriminated against the Plaintiff based on her age.

72. That the Defendant treated younger individuals more favorably than the Plaintiff.

73. That the Defendant failed and refused to address the situation.

74. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Age.

14

75. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

76. That the Plaintiff has been damaged as a result of the Defendant work environment.

77. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

78. That the Plaintiff is entitled to damages from the Defendant for their violation of ADEA in the amount of actual damages, compensatory, consequential, punitive damages and attorney's fees and costs.

## FOR A SECOND CAUSE OF ACTION
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII

79. That Paragraphs one (1) through eighty-six (86) are hereby incorporated verbatim.

80. That the Plaintiff was an employee of the Defendants in accordance with the law.

81. That the Defendants are employers in accordance with ADEA.

82. That the Defendants subjected the Plaintiff to a hostile work environment.

83. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

84. While employed the Plaintiff was subjected to unreasonable demands by her employer that complicated her employment, subjected her to severe emotional distress, failure to support her with assistance, failure to include her in command staff meetings, failure to follow policies and procedures, and thereby created a hostile work environment that was severe and pervasive.

85. The Plaintiff's was subjected to a work environment that perpetrated changed in terms and conditions in the Plaintiff's employment.

86. That the Defendants failed and refused to address the situation though the Plaintiff complained, compliance complaints and formal complaints of differential treatment.

15

87. That the Plaintiff suffered severe emotional distress as a result of the Defendants' hostile work environment based on the Plaintiff's Age, Hostile Work Environment and Retaliation complaints.

88. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendants subjected the Plaintiff.

89. That the Plaintiff has been damaged as a result of the Defendants' work environment.

90. That the Defendants are the direct and proximate cause of damage to the Plaintiff.

91. The Plaintiff is entitled to actual, compensatory, consequential damages and punitive damages.

**FOR A THIRD CAUSE OF ACTION**
**RETALIATION FOR COMPLAINTS REGARDING DISCRIMINATION AND**
**HOSTILE WORK ENVIRONMENT COMPLAINTS**

92. That Paragraphs one (1) through ninety-one (91) are hereby incorporated verbatim.

93. That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to ADEA.

94. That the Plaintiff has filed complaints regarding Age discrimination to management. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

95. That the Plaintiff complained of discrimination based on Age.

96. That the Defendants retaliated against the Plaintiff by placing her in the most hostile work environment, threatening her with transfers, ostracizing her from meetings, and failing to provide her with proper support in the regular execution of her duties.

97. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

98.	The Defendants' actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

99.	As a result of the Defendants' actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which he should be compensated.

100.	That the Defendants are the direct and proximate cause of injury to the Plaintiff.

101.	That the Plaintiff is entitled to an award of damages from the Defendants.  That the Plaintiff is entitled to recover damages from the Defendants in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII.

## PRAYER FOR RELIEF

WHEREFORE the plaintiff prays that this Honorable Court:

A.	Accept jurisdiction over this matter, including the pendent claim;

B.	Empanel a jury to hear and decide all questions of fact;

C.	Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D.	Award to plaintiff compensatory and consequential damages against the defendant;

E.	Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of sexual discrimination;

F.	 Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the ADEA;

G.	Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

17

H. Award all damages available to the Plaintiff pursuant to Federal and State Law;

I. Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in age discrimination, disparate treatment or retaliation against plaintiff and

J. enter any other order the interests of justice and equity require.

Respectfully Submitted,

ATTORNEY FOR THE PLAINTIFF

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

May 29, 2026